IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

NICHOLE S. BOYLAN,

                Plaintiff,                Case No. 3:07 CV 3254

-vs-

                                        <u>MEMORANDUM   OPINION</u>

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

KATZ, J.

The relevant background for this case is accurate and hereby incorporated as described in the June 12, 2008 Report and Recommendation ("R&R") of United States Magistrate Judge Kenneth S. McHargh (Doc. 17), as follows:

**I. PROCEDURAL HISTORY**

On April 22, 2004 and May 10, 2004, Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits, respectively, alleging a disability onset date of June 15, 2002 due to limitations related to mental health problems. On April 24, 2007, Administrative Law Judge ("ALJ") Frederick McGrath determined Plaintiff had the residual functional capacity ("RFC") to perform work that involves simple, routine, repetitive tasks in a low stress environment and that requires no decision-making, no more than occasional changes in the work setting and on-the-job judgments, and no more than occasional conversations or brief interaction with others, and, therefore, is not disabled (Tr. 26). On appeal, Plaintiff claims the ALJ's determination is not supported by substantial evidence.

**II. EVIDENCE**

**A. Personal and Vocational Evidence**

Born on September 21, 1975 (age 31 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§ 404.1563, 416.963. Plaintiff last completed the ninth grade and has past relevant work as a bartender, packager, and warehouse laborer (Tr. 31, 223-24).

**B. Medical Evidence**

In January 2004, Plaintiff went to the emergency room of St. Vincent Mercy Medical Center, following an assault to her face at home by her boyfriend (Tr. 111-23). Plaintiff had a cut on her lower lip and blood in her ear canal (Tr.

111). X-rays of her hand showed a minimal displaced fracture of her left index finger, with slight associated soft tissue swelling (Tr. 119).  Plaintiff was discharged a few hours later (Tr. 120). Lab tests showed that Plaintiff had recently used cocaine and marijuana (Tr. 113-14).

In March 2004, Plaintiff was first seen at Unison for mental health treatment (Tr. 133). Plaintiff sought treatment for mood swings and depressive symptoms (*Id.*). Plaintiff reported that she had attempted suicide about ten times in the past (*Id.*). She cut her arm and stabbed herself in the stomach (*Id.*). Plaintiff reported that her father had died in 1992, and she had no recent contact with her mother (*Id.*). She admitted at the evaluation that she used marijuana, cocaine, and alcohol (*Id.*). She denied any hallucinations or suicidal ideation (*Id.*). Plaintiff had some difficulty focusing and her insight and judgment appeared impaired (Tr. 133-34). Plaintiff was diagnosed with bipolar disorder and assigned a Global Assessment of Functioning ("GAF") score of 57 (Tr. 134-35). A psychiatric evaluation was recommended to help increase mood stabilization (Tr. 135).

On April 14, 2004, Satwant Gill, M.D., a psychiatrist, evaluated Plaintiff's mental condition (Tr. 129-32). Plaintiff told Dr. Gill about her past suicide attempts, which included an attempted overdose (Tr. 130). Plaintiff reported that she had received emergency care on at least two occasions, most recently in 2003, due to suicide attempts (*Id.*). Plaintiff told Dr. Gill that she had last worked two years earlier, and that her boyfriend at the time had a job and did not want her to work (Tr. 131). Plaintiff told Dr. Gill that she had not been sleeping well, and cried without provocation (Tr. 129). She reported that sometimes she had too much energy and was easily irritated (*Id.*). She denied any hallucinations or current suicidal ideation (*Id.*). Dr. Gill noted that she seemed somewhat anxious and nervous (Tr. 131). Dr. Gill diagnosed bipolar disorder along with histories of marijuana and cocaine abuse, and assigned a GAF score of 53 (Tr. 132). Dr. Gill prescribed Zyprexa (*Id.*).

On May 19, 2004, Plaintiff told Dr. Gill that her symptoms responded immediately to medication, and that she felt 90 percent better (Tr. 142). She was able to focus and her mind was not racing (*Id.*). Plaintiff denied depression and manic symptoms, and she reported that she was sleeping well (*Id.*). She also denied any hallucinations and suicidal ideation, and indicated that she had been abstaining from alcohol and drugs (*Id.*).

In June 2004, Plaintiff did not show up for her appointment with Dr. Gill (Tr. 141). On August 31, 2004, Plaintiff told Dr. Gill that the Social Security Administration had denied her disability application in July 2004, so she had been looking for a job (Tr. 139). Plaintiff reported that her mood had been stable, in spite of financial stress, and she reported no medication side effects (*Id.*). She continued to deny depression, hallucinations, suicidal ideation, and substance
abuse (Id.).

In July 2004, Joanne Coyle, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and assessed her mental residual functional capacity (Tr.

154-69). On the Psychiatric Review Technique Form, Dr. Coyle noted that Plaintiff had an affective disorder and substance addiction disorders, which did not meet or equal a listing (tr. 154, 157, 162), and she had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace (Tr. 164). Dr. Coyle completed a mental residual functional capacity assessment (Tr. 167-69). Under Part I of the Summary Conclusions, Dr. Coyle indicated that Plaintiff had no significant limitations in her ability to remember, understand, or carry out short, simple instructions, and in her ability to work in coordination with others without distraction and make simple work-related decisions (Tr. 167-68). Plaintiff had moderate limitations in her ability to carry out detailed instructions, maintain attention for extended periods, perform within a schedule, maintain regular attendance, complete a work day, interact appropriately with the general public, get along with co-workers, respond to changes, and response appropriately to criticism from supervisors (*Id.*). Plaintiff was not significantly limited in her ability ask simple questions, request assistance, be aware of hazards, take appropriate precautions, travel to unfamiliar places, and use public transportation (*Id.*). According to Dr. Coyle, Plaintiff retained the capacity to perform two and three-step tasks of a routine and non-social nature in a stable environment (Tr. 169). On November 23, 2004, Bonnie L. Katz, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and affirmed the conclusions of Dr. Coyle (Tr. 154, 169).

In October 2004, Dr. Gill increased Plaintiff's dosage of Zyprexa, due to her reports of interrupted sleep (Tr. 137). On November 23, 2004, Plaintiff told Dr. Gill that Zyprexa was helping a lot, and that her mood had been stable (Tr. 209). Plaintiff was still looking for a job (*Id.*). Plaintiff was experiencing some weight gain, but declined a medication change due to the benefit she had been experiencing from taking Zyprexa (Tr. 209-10). On December 28, 2004, Dr. Gill increased Plaintiff's dosage again after she reported that she had been somewhat down during Christmas (Tr. 207-08). Plaintiff reported some mild mood swings and some sleeping problems (*Id.*). Plaintiff continued to deny hallucinations and suicidal ideation, and Dr. Gill noted that Plaintiff's affect and mood were stable (*Id.*).

On March 2, 2005, records reflect that Dr. Gill switched Plaintiff's medication (Tr. 175). On June 14, 2005, Plaintiff visited Dr. Gill, who reported that Plaintiff had been prescribed Depakote and Seroquel, with good results (Tr. 206). Plaintiff reported that she had been sleeping fairly well, and that she was not experiencing depression or mania (*Id.*). In November 2005, Plaintiff reported that she had not been feeling too up or down, but that she had been having difficulty with sleep (Tr. 203).

In December 2005, Plaintiff began treatment with Muhammad Tufail, M.D., who found that she had no symptoms of mind racing, psychosis, anhedonia, irritability, or crying spells (Tr. 198). Plaintiff told Dr. Tufail that she had no medication side effects, and that she had abstained from using alcohol or drugs

3

(*Id.*). Plaintiff reported that she had stopped taking Trazodone because it had not been helpful in improving her sleep (*Id.*).

In March 2006, Plaintiff told Dr. Tufail that she had been irritable for three days about two weeks earlier, and had cut herself to relieve stress (Tr. 193). Plaintiff was feeling better since that time (*Id.*). Dr. Tufail increased her Depakote, and in April 2006, she reported a positive response to increased dosage (Tr. 191, 194). Plaintiff had not cut herself since that time, and her mood was more stable (*Id.*) Plaintiff indicated that she was applying for disability (Tr. 191). Plaintiff told Dr. Tufail that, with regard to her disability claim, she had problems with forgetfulness and organization, and she had trouble using public transportation due to anxiety around other people (*Id.*). She also reported that she had tried to go to school, but could not function and quit (*Id.*). Plaintiff last tried to work in 2002, and could not maintain her job for more than three or four months (*Id.*).

In April 2006, Dr. Tufail completed a disability report, in which he opined that Plaintiff has bipolar disorder with episodes of decompensation and inattention and impairment of judgment, which limit her ability to maintain a steady job (Tr. 218). Dr. Tufail noted Plaintiff has moderate limitations in 10 out of 20 total mental functional capacity areas (Tr. 217). Dr. Tufail found no significant limitations in Plaintiff's ability to understand and carry out short simple instructions, sustain an ordinary routine without supervision, make simple work-related decisions, interact appropriately with the general public, ask simple questions, maintain socially appropriate behavior, be aware of normal hazards and take precautions, and set realistic goals independently of others (*Id.*).

Sometime in 2006, Muhammad Tufail changed his name to Tufal Khan, M.D. On June 14, 2006, Plaintiff told Dr. Khan that she was under stress because her sister was going through a divorce and her father had suffered a stroke (Tr. 190). In August 2006, Plaintiff was prescribed Provigil to address medication-induced sedation (Tr. 188-89). On November 7, 2006, Plaintiff reported that with Provigil, her attention and concentration had increased, and she had better energy, and she was more alert (Tr. 185). Plaintiff denied problems with sleep, appetite, interest, or energy (*Id.*). Dr. Khan noted that Plaintiff did not have thoughts of self-harm or psychotic symptoms (*Id.*). Her insight and judgment were fair, and Dr. Khan observed no deficits in memory, attention, or concentration (*Id.*).

### C. Hearing Testimony

Plaintiff testified at the administrative hearing that she sleeps an average of three and one-half hours a night with her medications (Tr. 226-27). She spends most of the day lying down (Tr. 233). She rarely does household chores, but microwaves her own meals and tries to read or watch television (*Id.*). She has not used drugs or alcohol for over two years (Tr. 231-32). She had hoped to go back to school if she could get her medications right (Tr. 233.). She had been fired from a previous position because she had an argument with a supervisor who criticized her about something she had done (Tr. 229). Plaintiff had trouble with the staff in her doctor's office when he was running late for her appointment one day (Tr. 230).

4

>She feels antisocial, does not like to go to places where there are a lot of people, and in public she feels that others are talking or laughing about her (Tr. 230-31).
>Vocational expert ("VE") Joe Thompson also testified at the administrative hearing (Tr. 234). The ALJ asked the VE to consider a person of Plaintiff's age, education, and vocational background who has a functional capacity for work that involves simple, routine, repetitive tasks that are low stress, involves no decision-making, requires no more than occasional changes and judgment, and involves being around employees and the public throughout the work day, but only occasional conversation or interpersonal interaction of a brief nature (Tr. 235-36). In response, the VE testified that such an individual would be able to perform Plaintiff's past jobs as a packager and warehouse laborer (*Id.*).

R & R, Doc. 17 at 2-8.

Magistrate Judge McHargh recommends this Court affirm the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Nichole S. Boylan's ("Plaintiff") application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

Plaintiff filed a timely objection to the R&R on June 26, 2008 requesting that this Court not adopt the R&R, but remand for proper adjudication (Doc. 18). For the following reasons, this Court agrees with the Magistrate Judge's findings that the Commissioner's denial of Plaintiff's application is supported by substantial evidence and, therefore, hereby adopts the recommendation in full. (Doc. 17.)

**II. Standard of Review**

**A. Review of an R&R**

Any party may object to a magistrate judge's proposed findings, recommendations, or report made pursuant to Fed. R. Civ. P. 72(b). The district judge to whom the case was assigned may review a report or specified proposed findings or recommendations of the magistrate judge, to

which proper objection is made, and may accept, reject or modify in whole or in part the findings or recommendations of the magistrate judge. Fed. R. Civ. P. 72.3(b). This Court has reviewed the findings of the Magistrate Judge *de novo*. *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981).

### B. Disability standard

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### C. Review of Commissioner's decision

The standard of review described by the Magistrate Judge is hereby adopted as follows:

> Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court
> would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).
>
> This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether

such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

R&R at 9.

### III. Review of Plaintiff's objections

**A. The Magistrate Judge did not err in failing to address the moderate limitations identified by the State agency psychologist in review of Plaintiff's file.**

Plaintiff maintains that the Magistrate Judge erred in failing to address Plaintiff's moderate limitations as determined by the State agency psychologist in review of Plaintiff's file. Doc. 18 at 1. Social Security Ruling No. 96-6p clarifies the Social Security Administration's ("SSA") policy with respect to state agency medical and psychological consultants. It explains that because these consultants are experts in social security disability programs, the rules in 20 C.F.R. §§ 404.1527(f), 416.927(f) require a Commissioner to consider the consultants' findings of fact about the nature and severity of an individual's impairments as opinions of non-examining doctors. The ruling further explains that although a Commissioner is not bound by the opinions of state agency physicians, he may not ignore these opinions and must explain the weight assigned to them. *See* S.S.R. No. 96-6p. These findings must be addressed in the decision itself. *Id.* However, the Commissioner is "not required to address every piece of the evidence in the record in reaching his decision." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006).

Plaintiff argues that the Commissioner's decision did not accommodate the vocational expert's analysis of the State psychologist's identification of specific moderate limitations. However, as the Magistrate Judge correctly determined, the Commissioner met this burden when

he discussed the residual functional capacity conclusions of the State agency's psychologist. Plaintiff's objection is therefore not well-taken.

### B. The Magistrate Judge did not err in the discussion of the Commissioner's consideration of Plaintiff's treating doctor.

The weighing of medical evidence is in the province of the Commissioner. Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the Commissioner to resolve those conflicts. *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see also Bradley v. Sec. of Health & Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988). Because the Commissioner is bound by the SSRs when doing so, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544, 545 (6th Cir. 2004), the Commissioner is required to give controlling weight to the opinion of a treating physician should it be well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The regulations ensure that the Commissioner is not bound by the opinion of a claimant's treating physician, but if the Commissioner chooses to reject said opinion, the Commissioner must articulate a good reason for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

Plaintiff incorrectly maintains that the Magistrate Judge erred in the discussion of Psychiatrist Tufail (Kahn), whom Plaintiff claims found almost exactly the same moderate limitations as did the State agency psychologist. Specifically, Plaintiff cites the Magistrate Judge's lack of explanation as to how the R&R concluded that Dr. Tufail's opinion is inconsistent with medical evidence. Additionally, Plaintiff asserts that the Magistrate Judge did not provide good reason for rejecting Dr. Tutfail's opinion under the Social Security's own rules and

8

regulations. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("we will always give good reasons in our . . . decision for the weight we give your treating source's opinion."). However, the Magistrate Judge sufficiently notes that the Commissioner considered the length of Plaintiff's treatment relationship with Dr. Tufail, the frequency of examination, the nature and extent of the treatment relationship, and the specialization of the source. Doc. 17 at 14. The Magistrate Judge properly conducted a review of the Commissioner's written decision, which correctly reflects that in evaluating Dr. Tufail's opinion, the Commissioner considered all the necessary factors required in 20 C.F.R. § 404.1527(d)(2)-(6).

Further, the Court finds no error in the Magistrate Judge's conclusion that it was reasonable for the Commissioner to infer that Dr. Tufail's assessment was based more on Plaintiff's reports rather than her actual general functioning. A Commissioner's decision to disregard a doctor's opinion is supported where a treating physician's conclusions are based, in large part, on Plaintiff's subjective complaints. *See Ladwig v. Comm'r of Soc. Sec.*, No. 00-6585, 2002 WL 1491872 (6th Cir. 2002); *see also Young v. Sec. of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). The Magistrate Judge did not err in concluding that the Commissioner's treatment of Dr. Tufail's opinion was sufficient.

**IV. Conclusion**

For the reasons discussed herein, the Court adopts Report & Recommendation in its entirety.

        IT IS SO ORDERED.

                                                s/ *David A. Katz*
                                                DAVID A. KATZ
                                                U. S. DISTRICT JUDGE